UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRUNO CASATELLI, D.P.M., and NORTH JERSEY CENTER FOR SURGERY, P.A., | |
| Plaintiffs, | Civil Action No. 2:09-cv-6101 (SDW) (MCA) |
| v. | |
| HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, JOHN AND JANE DOES I-X, and ABC CORPORATIONS I-X, | **OPINION** |
| Defendants. | September 13, 2010 |

Before the Court is Defendant Horizon Blue Cross Blue Shield of New Jersey's

("Horizon") Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure

12(b)(6). This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a). Venue is proper in

accordance with 28 U.S.C. § 1391(a). This Court, having considered the parties' submissions,

decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For

the reasons stated below, the Court **grants** Defendant's Motion to Dismiss **without prejudice**.

## BACKGROUND

This case arises out of Horizon's alleged failure to fully reimburse Plaintiffs Dr. Bruno

Casatelli and North Jersey Center for Surgery, P.A. ("NJCFS") (collectively "Plaintiffs") for

medical services it provided to patients insured by Horizon. NJCFS is a New Jersey professional

service corporation that owns and operates a single room ambulatory surgical center in New

Jersey. Horizon is a non-profit health services corporation that provides health coverage and

benefits to its subscribers.

In August 2007, NJCFS initiated an action against Horizon in Sussex County ("First State Court Litigation") to recover increased reimbursements charged to Horizon subscribers covered by either the Small Employer Health Benefit Plans ("SEHBP") or the New Jersey State Health Benefits Plan ("SHBP") under several state law theories. (Defendant's Ex. A, January 22, 2010 (hereinafter "Def. Ex.").) Horizon removed the matter to the United States District Court for the District of New Jersey based upon the argument that NJCFS's state law claims for reimbursement arose under and were pre-empted by §502 of the Employee Retirement Income Security Act of 1974 ("ERISA"). (Def. Ex. B.) Following removal of the case to the District Court, NJCFS filed a motion to remand the case to state court on the basis that no federal question had been disclosed upon the face of the state court complaint. (Def. Ex. C.) Judge Ackerman remanded the case back to state court on September 17, 2008 ("District Court Remand"), finding, inter alia, that the Sussex County complaint did not present a federal question on its face, Horizon had the burden of establishing federal jurisdiction, and Horizon failed to "provide the Court with sufficient proof that the Horizon subscribers executed valid assignments." (Def. Ex. D 4-8.) However, Judge Ackerman explicitly noted that courts in the District of New Jersey have found that health care providers have derivative standing to sue under ERISA covered plans. (*Id.* at 6.)

Horizon thereafter filed a motion for summary judgment to dismiss NJCFS's complaint in the Sussex County litigation based upon federal ERISA preemption, non-exhaustion of administrative remedies, and other grounds. (Def. Ex. F.) The Sussex County Law Division Judge granted Horizon's motion based upon ERISA preemption and non-exhaustion of administrative remedies, dismissing the case without prejudice. As such, the state court

2

explicitly stated that "Plaintiff may re-file pursuant to the terms of ERISA if they so choose."
(Def. Ex. H. 7.)

Subsequently, Plaintiffs filed ERISA based causes of action as counter-claims in a
parallel but separate state court action between the parties in Morris County ("Second State
Court Litigation"). (Def. Ex. I.) In dismissing the counter-claims, Judge Dumont stated on the
record that the appropriate forum for the ERISA claims is Federal Court and that "irrespective of
the [possibility] that there maybe two litigations going on [after my dismissal of the cross-
claims], one in federal court, and one in state court, as far as [the state court] is concerned, it's
barred from deciding ERISA-based claims." (Tr. Of Oral Arg. 38, November 20, 2009
(hereinafter "State Tr.").) Furthermore, Judge Dumont found that "while the cause of action may
now be labeled differently . . . nevertheless it's not going to remain in [state court] . . . because of
the preemption doctrine." (*Id.* 39) Without elaborating, Judge Dumont concluded that "the
counterclaim[s] must be dismissed" regardless of whether *res judicata*, collateral estoppels,
judicial estoppels, or failure to exhaust administrative remedies applies as a rationale. (*Id.* 39-
40.)

Plaintiffs filed their Complaint asserting claims under ERISA in this Court on December
2, 2009. Horizon subsequently filed the instant motion to dismiss on January 22, 2010 asserting
that Plaintiffs' instant Complaint is not only barred by the doctrines of claim preclusion, issue
preclusion, and judicial estoppel, but also by non-exhaustion of administrative remedies.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6) a court may dismiss a complaint "for
failure to state a claim upon which relief can be granted." *Perkins v. Wash. Mut.*, 655 F. Supp.
2d 463, 467 (D.N.J. 2009). When considering such a motion, the Court must "accept all factual

3

allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff maybe entitled to relief." *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citations omitted). While a court will accept well-pleaded allegations as true for purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See Miree v. De Kalb Cnty.*, 433 U.S. 25, 27 n.2 (1977); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997) (holding that a court does not need to credit "bald assertions" or "legal conclusions" of a complaint when deciding a motion to dismiss). Furthermore, the complaint must assert facts that, when accepted as true, show that the legal allegations are plausible and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Scioli v. Goldman & Warshaw P.C.*, 651 F. Supp. 2d 273, 276 (D.N.J. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

## DISCUSSION

### A.  *Res Judicata*

Federal courts are required to give preclusive effect to state court judgments whenever the courts of the state from which the judgments emerged would do so. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). There are two doctrines of preclusion: claim preclusion and issue preclusion. New Jersey has expressly merged the doctrines under the broad, umbrella term "*res judicata.*" *See Hogg's v. New Jersey*, 3552 F. App'x 625 (3d Cir. 2009). Under New Jersey law, *res judicata* applies when: (1) the judgment in the first action is valid, final, and on the merits; (2) there is identity of the parties, or the parties in the second action are in privity with those in the first action; and (3) the claim in the later action grows out of the same

4

transaction or occurrence as the claim in the first action. *See Velasquez v. Franz*, 589 A.2d 143, 147 (N.J. 1991); *see also* Restatement of Judgments (Second) § 19 (1982).

Here, the District Court Remand is based on lack of jurisdiction (Def. Ex. E 9) and is statutorily excluded as an adjudication on the merits. *See* N.J. Rule 4:37-2(d); *Transamerica Ins. Co. v. Nat'l Roofing, Inc.*, 527 A.2d 864, 866 (N.J. 1987). In the First State Court Litigation, Judge Gannon found that ERISA preempts NJCFS' state law claims and, without reaching into the merits of NJCFS' state law claims, dismissed the case without prejudice and instructed Plaintiffs to re-file the claims under ERISA if they so choose. (Def. Ex. H 2.) Therefore, Judge Gannon did not adjudicate the merits of NJCFS' substantive claims. *Mason v. Nabisco Brands, Inc.*, 558 A.2d 851, 853 (N.J. Super. App. Div. 1989) (explaining that "without prejudice" generally indicates that "there has been no adjudication on the merits of the claim, and that a subsequent complaint alleging the same cause of action will not be barred simply by reason of its prior dismissal").

The application of the *res judicata* principle to the facts of the Second State Court Litigation is also self-evident. The judgment dismissing the ERISA based counter-claims was not based on a factual development of the occurrence, but on *res judicata*, collateral estoppel, judicial estoppel, ERISA preemption, and non-exhaustion of administrative remedies. (State Tr. 39-40.) When a court dismisses a matter under *res judicata*, collateral estoppel, or judicial estoppel, it has found the court is procedurally or equitably precluded from adjudicating on the merits of the case. As a result, Judge Dumont declined to decide the merits of Plaintiffs' ERISA based counter-claims. A finding of non-exhaustion of administrative remedy is also a procedural bar preventing the court from adjudicating on the merits of the case. *See* discussion *infra* Part C on Exhaustion of Administrative Remedies. Additionally, Judge Dumont found that "under the

5

doctrine of [ERISA ]preemption, [the claims] should be lodged in federal court" and that "as far as [the state court] is concerned, it's barred from deciding ERISA-based claims."[1]  (State Tr. 37-38.)  As such, Judge Dumont's jurisdictional based dismissal is also not an adjudication on the merits.  *See* N.J. Rule 4:37-2(d); *see also Transamerica*, 527 A.2d at 866.

Moreover, New Jersey courts recognize situations where a court dismisses a case with prejudice but does not actually address the merits of the claims themselves.  *Id.* at 867; *Mayflower Indus. v. Thor Corp.*, 83 A.2d 246, 256-57 (N.J. Super. Ch. Div. 1951), *aff'd*, 9 N.J. 605 (N.J. 1952).  Similar to *Transamerica* and *Mayflower*, Plaintiffs' cross-claims in the Second State Court Litigation were dismissed with prejudice (Def. Ex. L) but the court never reached an adjudication on the merits of those claim.  *See supra.*  Furthermore, at the time of the dismissal of the Second State Court Litigation, no opportunity to litigate the merits of the claims was extended to Plaintiffs, and no discovery was exchanged.  (See Def. Exs. H, J 19.)  Applying New Jersey law, *res judicata*'s preclusive effect does not apply to dismissal of Plaintiffs' cross-claims from the Second State Court Litigation.  *Benjamin v. Meyers Rec.*, 2008 WL 4630669 at *3 (N.J. Super. App. Div. 2008) (citing *Selective Ins. Co. v. McAllister*, 742 A.2d 1007 (N.J. Super. App. Div. 2000) ("in order for *res judicata* to bar a cause of action, [the litigants] must have been afforded a fair opportunity for all claims to have been addressed in the [prior] proceeding[s]"); *Transamerica*, 527 A.2d at 866 (stating where "there has been no actual adjudication, a dismissal [with prejudice] is more like one for lack of jurisdiction than one after a trial on the merits").

Because the District Court Remand, the First State Court Litigation, and the Second State Court Litigation judgments were not based on the merits, and state law makes that a prerequisite

---

[1] This Court declines to review the merits of Judge Dumont's dismissal of the cross-claims in the Second State Court Litigation.  Rather, this Court only looks at whether the dismissal of the cross-claims in the Second State Court Litigation involved an adjudication of the claims on the merits.

for application of *res judicata*, this Court declines to invoke *res judicata* to preclude Plaintiffs from pursuing the present litigation.

### B. Judicial Estoppel

Horizon also argues that the equitable doctrine of judicial estoppel bars Plaintiffs from now asserting its ERISA claims due to the position NJCFS took during Horizon's attempted removal of *North Jersey Center for Surgery, P.A. v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, Docket No.: SSX-L-560-07 to Federal Court. (Def. Ex. C.)

Judicial estoppel prevents a party from taking a position inconsistent with one taken a prior proceeding. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). The purpose of judicial estoppel is to prevent a party from playing "fast and loose" with courts. *Id.* at 750; *United States v. Vastola*, 989 F.2d 1318, 1324 (3d Cir. 1993). While exercising its discretion as to whether to apply judicial estoppel, three factors inform a court's decision: there must be (1) "irreconcilably inconsistent positions;" (2) "adopted ... in bad faith;" and (3) "a showing that . . . estoppel . . . address[es] the harm and . . . no lesser sanction [is] sufficient." *G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir. 2009) (citations omitted).

NJCFS merely maintains that it "did not plead nor [] imply federal questions in its well-pled complaint" in its brief in support of the motion to remand the case to state court, and that Horizon has failed to properly support its ERISA preemption claim. (Def. Ex. C 8.) Indeed, Judge Ackerman found that Horizon, not NJCFS, bears the burden of proof to remove the state court case to federal court. (Def. Ex. E 4.) NJCFS never alleges that there are no potential ERISA claims it can assert against Horizon. Moreover, the Supreme Court has long recognized that plaintiffs may limit their claims to avoid federal subject matter jurisdiction. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938). Hence, this Court finds that

7

NJCFS' previous state law based Complaint was not asserted in bad faith and Plaintiffs' current Complaint is not irreconcilably inconsistent with NJCFS's previous position.

More importantly, judicial estoppel is generally inappropriate where the defending party's position was not accepted or used by the District Court. *See G-I Holdings*, 586 F.3d at 262. Here, based on the evidence submitted, Judge Ackerman found that NJCFS' state court Complaint clearly did not contain any federal questions on its face, and remanded the case back to state court because Horizon failed to establish that NJCFS could have brought its contract claims under ERISA. (Def. Ex. E 4-5.) Therefore, it is self evident that Judge Ackerman did not have to rely on NJCFS's assertions to conclude that no facially recognizable federal question is present in NJCFS' state court Complaint and that Horizon failed to carry its burden of proof to remove the case to Federal Court.

Subsequent to the remand, Judge Gannon concluded that ERISA indeed pre-empts NJCFS' state law claims, dismissed the state court Complaint "without prejudice[,]" and expressly held that "[NJCFS] may re-file pursuant to the terms of ERISA if they so choose." (Def. Ex. H. 7.) NJCFS then filed the ERISA based claims as counter-claims in the Second State Court Litigation and then in this Court. Plaintiffs have asserted new claims based on the directions of the court, and there is no offense to the integrity of the judicial process warranting estoppel. *See G-I Holdings*, 586 F.3d at 262. Therefore, Plaintiffs have not played "fast and loose" with the court by rightfully exercising their control over the content of their Complaint or subsequently refiling the Complaint in accordance with court rulings.

## C. *Exhaustion of Administrative Remedies*

Horizon argues that Plaintiffs failed to exhaust the administrative remedies under both the

SGHBP[2] and the SHBP[3].  (Def.'s Br. 16.)  Plaintiffs assert that: (1) the appeals procedures laid

out in the both plans are voluntary in nature; (2) Plaintiffs should be excused from the exhaustion

requirement because it would be futile to do so; and (3) even if Plaintiffs were required to

exhaust the administrative remedies, they have done so.  (Pl.'s Br. 7-15.)

It is well settled in the Third Circuit that a plan beneficiary claiming an improper denial

of benefits must "exhaust the internal administrative procedures made available by the ERISA

plan at issue before seeking judicial relief." *Majka v. Prodential Ins. Co.*, 171 F. Supp. 2d 410,

414 (D.N.J. 2001).  "Courts require exhaustion of administrative remedies to help reduce the

number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for

benefits; to provide a non-adversarial method of claims settlement; and to minimize the costs of

claims settlement for all concerned." *Harrow v. Prudential Ins. Co.*, 279 F.3d 244, 249 (3d Cir.

---

[2] The SGHBP states that "[t]he appeal process consists of an informal internal review by [Horizon], a formal internal review by [Horizon] and a formal external review by an independent utilization review organization (IURO)" and that "[a] Member must follow the steps for filing the three levels of appeals as outlined in the Member Handbook and/or Evidence of Coverage" lest "the Member maybe prohibited from pursuing an external review." (*See* Pl.'s Ex. F Sub-Ex. A$_2$ 44.) (emphasis added).  The SGHBP provides the following language governing appeals:

   a.  First Level Appeal:  "A Member (or a Provider acting on behalf of the Member and with the Member's consent) may appeal administrative and utilization management determinations."
   b.  Second Level Appeal: "If a member (or a Provider acting on behalf of the Member and with the Member's consent) is not satisfied with [Horizon]'s First Level Determination, the Member or Provider can file a Second Level Appeal before a panel of physicians."
   c.  External Appeal: "A Member (or a Provider acting on behalf of the Member and with the Member's consent) who is dissatisfied with the results from [Horizon]'s internal appeal process can pursue an External Appeal with an [] IURO . . . assigned by the DOHSS."

(*Id.* 44-46.)
[3] The SHBP states that Claimant or provider "may appeal any administrative and utilization management determinations made by NJ PLUS with respect to its coverage." (Pl.'s Ex. F Sub-Ex. B 60.)  The SHBP provides the following language governing appeals:

   a.  First Level Appeal: "[Member] or [Member's] provider may [file an] appeal . . . by writing to NJPLUS."
   b.  Second Level Appeal: "[Member or Member's provider" can file a Second Level Appeal before other health care professionals selected by NJ PLUS who were not involved in the initial determination"
   c.  External Appeal: "If [Member] is dissatisfied with the results of NJ PLUS['] internal appeal process, [Member] or [Member's] legal representative can appeal in writing to the State Health Benefits Commission."

(*Id.* 60-62.)

2002) (internal citation and quotation marks omitted). "Except in limited circumstances, a
federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies
available under the plan." *Harrow v. Prudential Ins. Co.*, 76 F. Supp. 2d 558, 561 (D.N.J. 1999),
*aff'd*, 279 F.3d 244.

   i.     *Horizon's Administrative Remedies are Mandatory.*

   Here, Plaintiffs argue that the appeals process is voluntary because of permissive
language utilizing the terms "may" and "can" in the plans' policy documents. However, a plain
reading of the appeal policy clearly indicates the cherry picked permissive language is directed
towards dissatisfied claimants so that they have the choice to pursue further internal appeals, but
not skip the internal appeals process altogether. (*See* Pl.'s Ex. F Sub-Ex. A₂ 45, Pl.'s Ex. F Sub-
Ex. B 61.) Any other reading would be contrary to the public policy behind the exhaustion
requirement. *See Harrow*, 279 F.3d at 249.

   Moreover, the SGHBP plan's language that a member "*may* proceed directly to the
formal external review" *only if* "[Horizon] fail[s] to comply with the appeals process or expressly
waives its rights to an internal review of any appeal" also indicates the mandatory nature of the
available administrative appeals process. (*See* Pl.'s Ex. F Sub-Ex. A₂ 44) (emphasis added).
Furthermore, "[a] Member *must follow the steps for filing the three levels of appeals* as outlined
in the Member Handbook and/or Evidence of Coverage" lest "the Member may[ ]be prohibited
from pursuing an external review." (*Id.*)(emphasis added). The SHBP also clearly indicated a
mandatory appeal process before judicial action is sanctioned. *See Murray v. State Health
Benefits Comm'n*, 767 A.2d 509, 510 (N.J. Super. Ct. App. Div. 2001); *see also Burley v.
Prudential Ins. Co.*, 598 A.2d 936, 939 (N.J. Super. Ct. App. Div. 1991); N.J.A.C. 17:9-13.

10

Hence, absent some exception, the administrative procedures made available by the SHBP and the SGHBP are mandatory and must be exhausted before seeking judicial relief.

ii.     *Exhaustion of Administrative Remedies Would Not Be Futile.*

The Third Circuit recognizes that a plaintiff is excused from the exhaustion of administrative appeal procedures under ERISA if there is a "clear and positive showing" that exhaustion is futile. *Harrow*, 279 F.3d at 293. The party invoking the futility exception to the requirement of administrative exhaustion bears the burden of proof. *D'Amico v. CBS Corp.*, 297 F.3d 287, 293 (3d Cir. 2002.) "Whether to excuse exhaustion on futility grounds rests upon weighing several factors, including: (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile. *Id.* at 250.

Here, Plaintiffs' invocation of the futility exception rests entirely upon the affidavit of Maree Casatelli, an employee of NJCFS, and attached spreadsheets and exhibits indicating the appeals statuses of a random sample of claims relating to Horizon covered subscribers treated at NJCFS.[4]  (Casatelli Aff. ¶¶ 1-2.) First, the Court notes that NJCFS has pursued most of the random sample of its adverse claims determinations with Horizon through one or two levels of appeals. (*See id.* Exs. B, C.) However, Plaintiffs' attorney admitted on the record that some of the alleged underpaid claims are covered by the SHBP (State Tr. 33-34) but the evidence shows

---

[4] The Court notes that the evidence does not specify Horizon's patients' actual coverage plan nor does it specify the dates for when NJCFS filed the initial claims subsequent to services rendered. Furthermore, the Court notes that the evidence submitted is identical to that submitted during the state court proceeding. *Compare* Casatelli Aff., *with* Def. Rply Ex. A.

that no appeal has been made to the State Health Benefits Commission as required by the SHBP. (Casatelli Aff. Exs. B, C.)

While Plaintiffs assert that "Horizon [has] engage[d] in a blanket policy of denying and underpaying [NJCFS'] claims," the claim spreadsheet shows 87 out of the 386 patients have no underpayment claims against Horizon and the rest showing wide ranging percentages and amounts of alleged underpayment. (Casatelli Aff. Ex. A.) Without more, this Court cannot find there is a fixed policy denying benefits in place. *Cf. Berger v. Edgewater Steel Co.*, 911 F.2d 911, 917 (3d Cir. 1990) (finding a "fixed policy" existed where plan administrator invoked a provision of the Plan to deny benefits to, without exception, all plan participants who could have received the particular benefit).

Moreover, there is no evidence in the record from which the Court can deduce the timeliness of Horizon's response to the benefits claims filed by NJCFS. According to Plaintiffs, "Horizon routinely engaged in a practice of failing to provide notice within the 30 day mandatory time frame [for the initial benefits determination]." (Pl.'s Br. 14.) However, the timeline of claim determinations in the Casatelli affidavit shows that all but three of Horizon's initial responses for NJCFS' claims were between 14 to 54 days after the date of service rendered, a majority of which were within 30 days. (Casatelli Aff. Exs. B, C.) The Casatelli exhibits give no indication of when the claims were actually filed; therefore, the Court will not venture to guess whether any of the claimed benefits were denied or reduced more than 30 days from when NJCFS actually filed the claims in violation of Horizon's own policy document.

Significantly, it is undisputed that there is no "testimony" of a plan administrator that any administrative appeal would be futile. Instead, Plaintiffs rely on Casatelli's affidavit that "Horizon's employees consistently implied that further appeal would not result in a different

determination . . . more favorable to [NJCFS] and that [NJCFS] was wasting its time." (Casatelli Aff. ¶ 7.) However, in the absence any evidence showing that NJCFS pursued the mandatory appeal to the State Health Benefits Commission or a DOHSS assigned IURO as required by the Plans, see Discussion supra Part C(i), this court will not predict how the external appeals organizations would have decided NJCFS' claims based only on Casatelli's characterization of statements made by Horizon's employees.[5] *See Diaz v. United Agr. Emp. Welfare Ben. Plan & Trust*, 50 F.3d 1478, 1485 (9th Cir. 1995) (denying futility exception where Spanish-speaking claimants were delinquent in filing an administrative appeal, even though insurance company's on-site representative said, "[t]hey're not going to pay," because the court found that the "record contains nothing but speculation to suggest that the administrators would have reached a preconceived result in that respect."); *see also Wilson v. Globe Specialty Prods.* 117 F. Supp. 2d 92, 99 (D. Mass. 2000) (requiring exhaustion where administrator arguably evidenced an intent to refuse plaintiff's claim because court refused to "predict" how administrator would have decided the claim on review).

Accordingly, this Court finds Plaintiffs have not presented a clear and positive showing that efforts to follow the administrative appeals process would have been futile.

iii.    *NJCFS Has Not Exhausted Its Administrative Remedies.*

The sworn affidavit of Maree Casatelli shows that NJCFS appealed some of the alleged underpayments and non-payments of its fees with Horizon. However, the evidence indicates that since the instigation of the litigation in state court, none of the claims went through the external appeals mandated by the SHBP or the SGHBP, and the remaining claims have either not been appealed, or have not proceeded beyond the initial appeals stages. (Casatelli Aff. Exs. B, C.)

---

[5] The Court also declines Plaintiffs' invitation to find Horizon's telephone system, allegedly complex and difficult to bypass the computerize prompts to talk to an actual human being, (*see* Pl.'s Br. 13), contributes to a finding that the exhaustion of administrative remedies is futile.

13

Therefore, Plaintiffs have clearly not exhausted the administrative remedies under either the SGHBP or the SHBP. The Court must dismiss Plaintiffs' Complaint as premature to allow Defendant to resume processing the administrative appeals and Plaintiffs to pursue further administrative remedies available under both plans prior to the institution of further litigation.

### D. Substantive Claims of the Case

The Court will not address whether Horizon is the proper party to sue under SHBP or the merits of Plaintiffs' substantive claims at this time because the Court finds that Plaintiffs are required to exhaust their administrative remedies under both plans. *Wilson v. MVM, Inc.*, 475 F.3d 166, 173 (3d Cir. 2007).

### CONCLUSION

For the reasons stated above, the Court **grants** Horizon's motion to dismiss **without prejudice**.

s/ Susan D. Wigenton, U.S.D.J.

Orig   :   Clerk
Cc     :   Parties
               Madeline Cox Arleo, U.S.M.J